NOTICE

Decision filed 04/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220550-U

NO. 5-22-0550

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 15-CF-411 |
| | ) | |
| THERON PRICE, | ) | Honorable |
| | ) | Derek J. Girton, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's first stage dismissal of defendant's postconviction petition is affirmed where the petition failed to set forth the gist of a constitutional claim.

¶ 2    Following a jury trial, defendant, Theron Price, was convicted of first degree murder and was sentenced to a 60-year prison term. Defendant appeals the first stage dismissal of his postconviction petition and argues that his petition set forth a gist of a constitutional claim by arguing that his fourth amendment rights were violated. He requests this court remand the case back to the trial court and advance to second stage proceedings. For the following reasons, we disagree.

1

¶ 3                                    I. BACKGROUND

¶ 4     On July 22, 2015, defendant was charged, by indictment, with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2014)) in relation to the shooting death of William Newbern III. The indictment further alleged that defendant personally discharged a firearm, causing Newbern's death on November 24, 2014.[1] Newbern's body was discovered on November 25, 2014. The same day, police spoke with residents of the apartment complex where the body was found, including defendant.

¶ 5     Defendant was interviewed by Detectives Brian Lange and Phil Wilson of the Danville Police Department on November 25, 2014. At that time, defendant was read his *Miranda* rights and also signed a document waiving those rights. During the interview, defendant indicated that he had been in the decedent's apartment the night before and had an argument with the deceased about a speaker. Defendant stated that when he left the deceased's apartment, he locked the door, drove around, and later called 911 from somewhere in Indiana because he was lost. He stated that when the police would not escort him back to the highway, he spoke to some security guards who were able to put the directions in his navigation system on his phone.

¶ 6     The defendant had his phone with him during the interview and Detective Lange requested defendant's consent to search the phone. Defendant provided both verbal and written consent to the officer. The written consent was signed by defendant, "giving consent to search his Samsung phone." The consent form contained the phone's serial number and the phone's number for text messages and other calls, GPS, and other applications on the phone. A copy of defendant's phone

---

[1]The details related to numerous pretrial, trial, and posttrial evidence, issues, and actions by defendant and his trial counsel were previously set forth in the Fourth District's detailed and lengthy decision issued in defendant's direct appeal. See *People v. Price*, 2021 IL App (4th) 190043, ¶¶ 7-115. As such, this decision shall only address the issues and evidence necessary to address defendant's arguments in the current appeal.

data was made using Cellebrite software, the same day as the interview. Later that month, Agent William O'Sullivan from the Federal Bureau of Investigations (FBI) performed a search of the copied phone data, but only looked at the GPS data.

¶ 7 Defendant was arrested on July 22, 2015. Agent O'Sullivan performed an additional search of defendant's phone data on September 13, 2018, and discovered two deleted text messages sent from defendant's brother, Gaddis Price, to defendant's phone. The first was sent on November 24, 2014, and read, "You gotta piss on your right hand or use ammonia on your shirt and check your clothes for residues." The second message sent on November 25, 2014, read, "And delete this after you read it and clean yourself up." The evidence was disclosed in discovery.

¶ 8 On October 10, 2018, defendant's trial counsel filed a motion to suppress evidence related to the two text messages. The motion addressed the FBI's September 13, 2018, examination of defendant's cell phone. The motion acknowledged defendant's written consent to search defendant's cell phone for "text messages, contacts, GPS, call logs, and all applications" but stated no search warrant was obtained to search the entirety of defendant's phone "for all digital contents contained within the phone." The motion alleged that the September 13, 2018, search "exceeded the written consent and was done without verifying if the consent was still valid approximately 4 years later." The motion contended that it was unreasonable to find the consent was still valid and therefore it was an "unreasonable" search pursuant to the fourth amendment. The motion requested the trial court suppress the deleted text messages.

¶ 9 On October 11, 2018, defense counsel also filed a motion *in limine* related to the cell phone data retrieved and the anticipated testimony of FBI Agent O'Sullivan, related to his September 2018 search on defendant's cell phone. Citing *People v. Harper*, 2017 IL App (4th) 150045, ¶¶ 56, 58-63, and *People v. Kent*, 2017 IL App (2d) 140917, the motion argued that the text messages

were not admissible under the rules of evidence, specifically claiming the messages were hearsay, did not fall under the business records exception, and failed to indicate who was texting defendant or whom defendant was texting.

¶ 10     On October 15, 2018, the State filed a *Brady* notice as it related to Gaddis Price, who was subpoenaed on October 12, 2018. The notice was based on text messages Gaddis sent to his brother, the defendant, on November 24, 2014, and November 25, 2014. The *Brady* notice advised of what was contained in those text messages, and that Gaddis was advised that he would have to testify at defendant's trial and, in return for his truthful testimony, the State would not seek criminal charges against Gaddis, namely accessory after the fact and obstruction of justice.

¶ 11     On October 15, 2018, the trial court granted defense counsel's motion *in limine* finding the deleted messages were inadmissible under the Rules of Evidence. Defense counsel withdrew its motion to suppress reserving the right to refile the motion if necessary. The court confirmed it would allow defense counsel to refile the motion "if something else comes up during the course of the trial." The case proceeded to trial on October 16, 2018.

¶ 12     At the trial, Detective Lange testified that he was present with Detective Phil Wilson when defendant signed the consent to search his phone. During this initial interview, defendant also provided written consents allowing the police to search his vehicle and his residence. Detective Lange testified that at no time during that initial interview did defendant revoke any of the consents. Detective Lange testified that after a break, he spoke with defendant again during a second interview on November 25, 2014, in which he was accompanied by Detective Ralph Dunham. Detective Lange testified that during the second interview he advised defendant that Detective Wilson would take the phone to "dump it." He explained to defendant that this meant the data would be copied from his phone and the phone would be returned to defendant in a timely

4

fashion. Following the interview, the police also asked to take defendant's clothing into evidence and defendant obliged. Despite his previous statement to defendant regarding his phone, Detective Lange testified that at no time did defendant request return of his phone.

¶ 13 On October 17, 2018, the State moved for reconsideration of the court's prior ruling on defendant's motion *in limine* based on a statement provided by defendant's brother, Gaddis Price. The State asked the court to allow it to present Mr. Price's live testimony to reconsider the foundational requirements for the admission of messages that were deleted or the content of messages that were deleted from defendant's phone in November 2014. Defense counsel objected stating the information was just provided and requested the court allow counsel to prepare a written memorandum addressing the issue. The court allowed defense counsel to prepare a written memorandum.

¶ 14 On October 19, 2018, defense counsel filed a memorandum in support of denying the State's motion to reconsider the court's ruling on defendant's fourth motion *in limine*. Therein, defense counsel argued that Gaddis's testimony was based on hearsay, and therefore was not admissible. Counsel further argued that the deleted text messages were also hearsay because no one could testify to the accuracy of any computer-generated records created by the phone causing the results to be unreliable, untrustworthy, and incomplete. The memorandum also reserved the right to reinstate and assert any updated version of the previously withdrawn motion to suppress.

¶ 15 A hearing on the State's motion for reconsideration was held on October 22, 2018. The State first noted that defense counsel previously filed a motion to suppress and believed counsel would resubmit that motion. The State started by addressing the motion *in limine* and argued that it was not trying to admit the deleted text messages under the business records exception; instead, the State believed the foundational requirements for any other documentary testimony was

required and the FBI forensic examiner would be able to testify about the deleted messages as well as the length of the communications between the brothers late in the evening on November 24, 2014, and early in the morning on November 25, 2014. In response, defense counsel relied on both *Harper* and *Kent*, arguing the evidence was inadmissible. The State replied that *Kent* was inapplicable because it was based on a completely different situation than the current situation.

¶ 16    After arguments were presented, the court noted that when it first ruled on the motion *in limine*, its decision was based on the foundational problem raised by *Harper*. The court found those foundational problems were rectified and that it would allow the deleted text messages into evidence. The court further addressed the motion to suppress that was withdrawn and noted that it was based on whether or not the authorities had consent to look into the cell phone to the extent they did, to get the deleted text messages. On this issue, the court stated,

> "it appears to the Court that the phone was left with the authorities the entire time. The consent form does say text messages. I realize it doesn't say 'deleted' or 'undeleted,' but it does include text messages. There's no ending date on the consent form. It seems to me that I heard—and I could be wrong—maybe Officer Wilson testified that the Defendant never came back to retrieve his phone, so those—those would all be factors that I would look at in determining, you know, whether or not they exceeded their authority on that issue."

¶ 17    Thereafter, defense counsel added some initial information to the motion to suppress stating it was "not as simple as it sounds." Defense counsel stated, "As far as what the consent to search allows, it allows the search of a cell phone for text messages, GPS location, applications, but where the FBI found these text messages wasn't where a normal person would look for text messages." Defense counsel argued that "a separate computer system" was required "to hook up

6

the phone to get into files within the phone, because the phone is a computer" and stated expert testimony would help. Counsel argued that the messages were not in a text message folder and claimed they were "no longer text messages *per se*. They are strings of data, so they are no longer what the police had consent to look for, because they are no longer text messages at this point. They are temporary data waiting to become something else." Counsel argued that defendant's consent to search text messages was not a consent to search the garbage files on the phone. Counsel compared it to a search warrant for file cabinets and an officer also searching the paper shredder in the same room. Defense counsel also argued that defendant did not abandon the phone. The officers said they would get it back to defendant when they were done but they never specified they were done with the phone.

¶ 18    The State argued that defense counsel's analogy was inaccurate and stated the situation was more like the taking of an x-ray that was reviewed a second time at a later date explaining that the data used in the most recent search was from the same original data dump when defendant originally left his phone with the police. Defense counsel then argued that it did not matter that defendant never picked up his cell phone because the officers were analyzing the contents of the flash drive, and they would never have returned the copied data to defendant. Thereafter, the court stated that the officers "were allowed to look at the contents of his phone pursuant to the consent form" and denied defense counsel's motion to suppress. The court further stated that Gaddis would be allowed to testify.

¶ 19    At trial, Gaddis was called to testify and admitted sending two text messages to his younger brother on or about November 25, 2014. He believed the first message said, "You got to piss on your right hand or use ammonia on your shirt and check your clothes for residues." He also believed the second message stated, "And delete this after you read it and clean yourself." On

7

cross-examination, Gaddis denied speaking to his brother. He further stated that he could not remember sending the specific messages addressed by the State but indicated that he sent his brother text messages because he texted "a lot of stuff to him, crazy stuff." He further testified that he had no idea of what was going on in defendant's life when he sent the messages. Following the remainder of testimony that was presented at trial by other witnesses, the jury found defendant was guilty of first degree murder and that he personally discharged the firearm that proximately caused Newbern's death.

¶ 20    On November 21, 2018, defense counsel filed a motion for judgment notwithstanding the verdict, or, in the alternative, a motion for a new trial. Therein, defense counsel argued, *inter alia*, that the court erred in allowing the State's motion for reconsideration of defendant's motion *in limine* based on evidence that was not new or substantially different than what was available at the time of the first hearing. The motion further argued that the court erred in granting the State's motion to reconsider and denying defendant's motion *in limine* in determining the foundation issues had been cured despite no additional foundation evidence. The motion also argued that the court erred in denying defendant's motion to suppress the evidence related to the deleted text messages because defendant never gave permission for the copy of his phone data to be searched beyond the information he allowed and the data found was only viewable with a special program and, therefore, beyond the consent. Alternatively, the court should have found the consent was no longer valid when the search of the contents of the phone was performed. Following the hearing on November 29, 2018, the trial court denied defendant's motion and sentenced defendant to 60 years' incarceration.

¶ 21    Defendant appealed, arguing—*inter alia*—the trial court erred by admitting the deleted text messages recovered from defendant's phone and allowing expert testimony related to the

messages. *People v. Price*, 2021 IL App (4th) 190043, ¶¶ 108-142. Defendant provided three arguments related to these issues: "(1) the State failed to lay an adequate foundation for the text messages because they were computer generated records, (2) the messages were hearsay and not subject to any hearsay exception, and (3) the trial court's reversal of its order *in limine* on the second to last day of trial violated defendant's due process rights." *Id.* ¶ 109. The appellate court addressed these arguments in a lengthy opinion (*id.* ¶¶ 108-142) and ultimately affirmed defendant's conviction. *Id.* ¶ 187.

¶ 22    On July 18, 2022, defendant filed a *pro se* petition for postconviction relief. The petition alleged that he was denied his right to effective assistance of counsel when his (1) trial counsel failed to communicate adequately with him while he was in custody; (2) trial counsel failed to properly investigate the case and failed to sufficiently meet with defendant to discuss the case while defendant was in custody; (3) trial counsel failed to obtain a DNA expert; and (4) appellate counsel failed to raise a claim of ineffective assistance of trial counsel for trial counsel's failure to (a) investigate; (b) interview potential witnesses; (c) interview defendant's brother; (d) subpoena phone records for defendant's mobile device and cell towers; and (e) communicate.

¶ 23    The petition was supported by a one-page affidavit certifying that defendant read and understood the postconviction petition and the facts presented therein were true and correct to the best of his recollection. In addition to the petition and affidavit, defendant filed eight handwritten pages in which he stated he was innocent, and the State's evidence was unconstitutionally insufficient to support or sustain his conviction where the State failed to prove the essential elements of the criminal offense. The document further claimed that defendant's appellate counsel was incompetent because he failed to (1) raise the question of reasonable doubt on direct appeal; (2) raise the issue that defendant was denied effective assistance of trial counsel given that trial

9

counsel failed to (a) object to the inadmissible evidence and (b) preserve the error in a written posttrial motion because there was no strategic reason for allowing the hearsay testimony at trial. The affidavit also stated that appellate counsel:

> "Failed to raise *** that trial counsel was ineffective under *Strickland v. Washington* for failing to object or preserve in a written post-trial motion, the federal constitutional violation of the earlier mention[ed] claims as well as petitioner fourth amendment, his arrest, failing to exhaust available state court remedies and waiving such claims for post-conviction review and procedurally defaulting the federal constitutional claims for federal *habeas corpus* review."

¶ 24    The document further claimed that trial counsel was ineffective by (1) allowing the State to improperly bolster complainant's testimony by repeatedly introducing prior consistent statements concerning the details of the alleged crimes and the repeated introduction of these prior out of court statements and (2) failing to object to the inadmissible evidence at trial and failing to preserve the error. The document also claimed that he should be allowed to file a successive postconviction petition where the first postconviction petition was dismissed in a fundamentally deficient manner and he was denied a reasonable level of assistance by his postconviction counsel where he did not consult with petitioner by mail or in person to ascertain his contentions of deprivation, and made no amendments to the *pro se* petition necessary for an adequate presentation of the claims or shape those complaints into appropriate legal form.[2]

¶ 25    On August 11, 2022, the trial court issued a docket entry order that stated,

---

[2]The record fails to reveal that any *pro se* postconviction petition was filed prior to the one on July 18, 2022.

10

"The Court has reviewed the Petition for Post-Conviction Relief filed by the Defendant on 07-18-22 and the record in this case. The Court finds that the Petitioner's Petition fails to raise an arguable basis in either law or fact for a finding of ineffective assistance of either trial or appellate counsel. Therefore, The Petition for Post-Conviction Relief filed 7-18-22 is DISMISSED."

Defendant timely appealed.

¶ 26                                II. ANALYSIS

¶ 27    On appeal, the sole issue raised by defendant is that the dismissal of his postconviction petition was unwarranted because it "is arguable that appellate counsel was ineffective for failing to raise on direct appeal the fourth amendment issue raised in the motion to suppress the deleted text messages." Defendant contends that the basis for this claim was trial counsel's motion to suppress that claimed—despite defendant's consent to the search of his phone in 2014—the warrantless 2018 search violated defendant's fourth amendment rights. Defendant argues that the trial court denied the motion and found the 2014 consent authorized the 2018 search and the issue was preserved in a posttrial motion.

¶ 28    The State requests affirmation of the dismissal, arguing that defendant's *pro se* postconviction petition did not state the gist of a constitutional violation that he now raises on appeal. In the alternative, the State argues that defendant's argument is contradicted by the record because the search was not "warrantless," the 2018 examination was from data previously copied from defendant's phone in 2014, even if it was a "new" search, it was still authorized under the 2014 consent, the deleted texts would inevitably have been discovered, the consent was never revoked, and no prejudice can be shown.

11

¶ 29 The Post-Conviction Hearing Act (Act) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1(a) (West 2020); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). The Act does not provide for a continuance of the prior proceedings. *People v. Harris*, 224 Ill. 2d 115, 124 (2007) (citing *People v. Flowers*, 208 Ill. 2d 291, 303 (2003)). The Act provides "a collateral attack upon the prior conviction and affords only limited review of constitutional claims not presented at trial." *Id.* (citing *People v. Greer*, 212 Ill. 2d 192, 203 (2004)).

¶ 30 "The Act provides a three-stage process for adjudicating postconviction petitions." *People v. Huff*, 2024 IL 128492, ¶ 19. "At the first stage, the circuit court must, within 90 days of the petition's filing, independently review the petition, taking the allegations as true, and determine whether 'the petition is frivolous or is patently without merit.' " *People v. Hodges*, 234 Ill. 2d 1, 10 (2009); see also 725 ILCS 5/122-2.1(a)(2) (West 2020). When the court reviews the petition, it determines only if the petition states the gist of a constitutional claim. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). In order to "set forth the gist of a constitutional claim, the post-conviction petition need only present a limited amount of detail [citation] and hence need not set forth the claim in its entirety." (Internal quotation marks omitted.) *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). Legal arguments and citation to legal authority is unnecessary. *Id.* (citing *Gaultney*, 174 Ill. 2d at 418). A petition may only be dismissed if it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 11-12. This is akin to an "indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. In making the determination, the trial court takes the allegations in the petition as true, unless they are rebutted by the record, and construes the allegations liberally in the petitioner's favor. *People v. Allen*, 2015 IL 113135, ¶ 25.

¶ 31    If a petition fails to state the gist of a constitutional claim, the petition is deemed frivolous or patently without merit. *People v. Collins*, 202 Ill. 2d 59, 66 (2002). A frivolous petition will be summarily dismissed. *Greer*, 212 Ill. 2d at 203-04. A meritorious petition will advance to the second stage of proceedings. *Id.* at 204; 725 ILCS 5/122-2.1(a)(2) (West 2020). We review the trial court's first-stage dismissal of a postconviction petition *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 32    Here, despite the *pro se* petition setting forth numerous claims of ineffective assistance of counsel, the only claim raised on appeal is defendant's alleged "fourth amendment" claim. While only "a limited amount of detail" (see *Edwards*, 197 Ill. 2d at 245) is required, we cannot find the bar was met for this "claim."

¶ 33    First, defendant's *pro se* postconviction petition did not include any fourth amendment claim. The claim is found only in the untitled eight-page document filed on the same date as the petition. Second, the claim does not provide "little detail," it provides *no* detail to support the claim raised. On appeal, defendant claims a fourth amendment violation related to the FBI review of data in 2018 that was copied pursuant to a search warrant executed in 2014. However, the statement in the untitled eight-page document claims defendant's appellate counsel was ineffective for failing to raise "the earlier mention[ed] claims as well as petitioner's fourth amendment, his arrest, failing to exhaust available state court remedies and waiving such claims for post-conviction review and procedurally defaulting the federal constitutional claims for federal *habeas corpus* review." *No* detail regarding what appellate counsel was to argue regarding either the "fourth amendment" or defendant's "arrest" was provided.

¶ 34    In his reply, defendant claims the petition should be liberally construed, and we agree that it should. See *People v. Hommerson*, 2014 IL 115638, ¶ 7. However, there must first be something which this court can liberally construe. Therefore, we hold that defendant's inclusion of the words

"fourth amendment," with nothing more, is insufficient to raise a claim of ineffective assistance of counsel, regardless of whether the words are in the petition or any accompanying document. As no other basis was presented regarding the trial court's dismissal of defendant's postconviction petition, we affirm the court's dismissal of the postconviction petition.

¶ 35                                        III. CONCLUSION

¶ 36      For the foregoing reasons, we affirm the trial court's judgment.


¶ 37      Affirmed.